**FILED**
**Mar 20, 2023**
**08:14 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| Cecilia Kanbi, | ) | Docket No. 2020-06-1501 |
|       **Employee,** | ) | |
| v. | ) | |
| Claudia Ghanem, d/b/a Kebab Gyros, | ) | State File No. 66043-2020 |
|       **Employer,** | ) | |
| And | ) | |
| Society Ins. Co., | ) | Judge Kenneth M. Switzer |
|       **Carrier.** | ) | |

## EXPEDITED HEARING ORDER

The Court held an expedited hearing on March 15 on Cecilia Kanbi's request for additional medical benefits with a physician other than Dr. Jeffrey Willers. Kebab Gyros opposed the request. For the reasons below, the Court orders that Kebab Gyros must schedule a return appointment for the authorized treating physician, Dr. Willers, to reevaluate Ms. Kanbi and assign maximum medical improvement and an impairment rating. If he is unwilling to do so, Kebab Gyros must offer her a panel of orthopedic specialists.

### Claim History

Ms. Kanbi suffered injuries from an armed robbery while working at Kebab Gyros on November 4, 2019.[1] She first saw Dr. Scott Dube, selected from a panel, for a gunshot injury to her right foot. He referred her to podiatrist Dr. Tod Bushman. Dr. Bushman performed surgery in May 2021, but Ms. Kanbi had continued pain, particularly in her third toe.

Dr. Bushman then thought it might be necessary to amputate the toe. Ms. Kanbi did not initially agree, so Kebab Gyros authorized a second opinion with orthopedic surgeon Dr. Willers. Dr. Willers agreed that the amputation was the correct course of action.

---

[1] She also suffered a mental injury, which was ultimately accepted and is not at issue at this time.

Dr. Willers wrote, "She states that she would prefer that I perform the surgery." Ms. Kanbi testified that the carrier "tricked" her into agreeing to Dr. Willers as the surgeon but offered no supporting documentary proof. Ms. Kanbi was represented by an attorney at that time.

The amputation occurred in April 2022, and Ms. Kanbi followed up with Dr. Willers four times. The records from these visits state that she showed improvement each time but also reported continuing foot pain. She underwent physical therapy and was prescribed various medications, with little success in relieving her symptoms.

At the final visit in July, Ms. Kanbi reported "a significant amount of nerve pain." After an examination, Dr. Willers wrote:

> Objectively her foot looks great. Her swelling is almost nonexistent. Her tenderness is markedly less than it was prior to surgery. I do not have a great explanation for all of her subjective reports of pain given her fairly benign exam today. . . . I do not think orthopedically I have any additional treatment options to offer.

Dr. Willers referred Ms. Kanbi to Dr. Jeffrey Hazlewood for pain management. He deferred placing her at maximum medical improvement or assigning an impairment rating. Dr. Willers wrote that the rating "really will be more of the case upon her nerve pain than anything." Dr. Willers restricted her from standing and walking for more than four hours per day and recommended hourly sit-down breaks as needed.

Ms. Kanbi's visits with Dr. Hazlewood, a pain management and physical medicine/rehabilitation specialist, began in August. He ruled out complex regional pain syndrome and recommended several strategies, including a change in medication. Dr. Hazlewood agreed with Dr. Willers's restrictions and increased her medications.

In October, Dr. Hazlewood informally placed Ms. Kanbi at maximum medical improvement but also wrote that Dr. Willers should do this from an orthopedic standpoint. However, he noted that he would do so if Dr. Willers preferred.

In November, Dr. Hazlewood repeated the pronouncement of maximum medical improvement. Dr. Hazlewood placed a one-percent impairment rating. He also noted, "I cannot write permanent restrictions for just pain tolerance for nonspecific neuralgic pain without CRPS. Therefore, from an orthopedic stand point [sic] I will say return duty without restrictions." At the most recent visit in February 2023, Dr. Hazlewood prescribed an h-wave unit. Ms. Kanbi continues to treat with him.

In the meantime, Ms. Kanbi returned to Dr. Bushman in early February 2023. After examining her foot, he recommended "follow up with pain management concerning diagnoses potential reflex sympathetic dystrophy or chronic regional pain syndrome" and "follow-up [sic] with pain management and/or further orthopedic physician."

Ms. Kanbi testified that the pain makes sleep difficult and that she cannot drive. She uses a cane, although none of the medical records mentions its necessity.

Roland Anku and Anthony Amofa additionally testified. Mr. Anku is a coworker, who was present on the day she was shot. He has known Ms. Kanbi for approximately twenty-five years and attested to her strong work ethic. Mr. Amofa is a friend. He translated documents for her and interpreted discussions between Ms. Kanbi and her former attorney. Mr. Amofa said that she never needed the cane until after the accident and treatment.

Ms. Kanbi's affidavit asks the Court to "order another doctor opinion and overruled [sic] Dr. Willers's conclusion, and or accept Dr. T. Bushman's [diagnosis]."

## Findings of Fact and Conclusions of Law

To grant Ms. Kanbi's request, she must prove she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2022); *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The Workers' Compensation Law states that an employer must furnish medical treatment made reasonably necessary by a work injury. Tenn. Code Ann. § 50-6-204(a)(1)(A). Kebab Gyros accepted the claim and has complied with this obligation by authorizing care with several treating physicians: Drs. Dube, Bushman, and Willers, as well as pain management with Dr. Hazlewood.

Ms. Kanbi sincerely testified that despite this lengthy treatment, her foot pain remains and has altered her ability to sleep, work, and drive. Her witnesses generally supported this testimony. The Court finds them all credible.

But the Court must also consider the medical proof, starting with Dr. Dube. Since he was selected from a panel, he was the first authorized treating physician under section 50-6-204(a)(3)(i). Subdivision -204(a)(3)(A)(ii) allows a treating physician chosen from a panel to make referrals to a specialty physician when necessary, which is how Dr. Bushman became involved.

Once Dr. Bushman gave amputation as a possible option, this entitled Ms. Kanbi to a second opinion regarding the proposed surgery with Dr. Willers under subdivision -204(a)(3)(C). Then Dr. Willers became the treating physician by the parties' agreement.

The Court recognizes Ms. Kanbi's disagreement that she chose him to perform the amputation. However, the medical records do not support her contention. Ms. Kanbi was represented by competent counsel at the time, and she agreed to the surgery on the scheduled date.

Dr. Hazlewood has been treating Ms. Kanbi for pain management under subdivision -204(j).

The doctors' roles as described under the statute guide how the Court should regard their opinions. Section 50-6-204(H) states that "[a]ny treatment recommended by a physician . . . selected pursuant to this subdivision (a)(3) or by referral, if applicable, shall be presumed to be medically necessary[.]" *Williams v. People Ready, Inc.,* 2022 TN Wrk. Comp. App. Bd. LEXIS 23, at *7 (June 2, 2022). Moreover, more than one doctor may be an authorized treating physician. *See Johnson v. Inspire Brands d/b/a Blazin Wings. Inc.,* 2022 TN Wrk. Comp. App. Bd. LEXIS 35, at *23-24 (Sept. 7, 2022) (the legislature's use of the term "the treating physician" in the statute does not signal the legislature's intent for there to be only one physician entitled to a presumption of correctness). Therefore, the opinions of both Drs. Bushman and Willers are presumed correct regarding medical necessity.

Dr. Bushman recently wrote that Ms. Kanbi should continue with pain management "and/or further orthopedic physician." These recommendations are presumed correct. Dr. Hazlewood's records do not mention whether she could benefit from further orthopedic treatment. Therefore, relying on Dr. Bushman's opinion, the Court finds Ms. Kanbi is likely to prevail at a hearing on the merits that she is entitled to additional orthopedic treatment.

Dr. Willers is the most appropriate choice to treat her, given that he is an orthopedic surgeon, and he is the authorized treating physician who performed surgery and saw her several times. Further, Dr. Willers has not referred her back to any other treating doctor. Tenn. Code Ann. § 50-6-204(3)(E). Ms. Kanbi expressed dissatisfaction with him. The Court understands her concern. However, she offered no legal basis for the Court to designate any other physician.

As for Dr. Hazlewood, subdivision -204(j)(i) states that a treating physician may refer an "employee for pain management encompassing pharmacological, nonpharmacological and other approaches to manage chronic pain." Dr. Hazlewood provided this treatment and continues to do so.

However, Dr. Hazlewood also assigned maximum medical improvement *from an orthopedic standpoint* and an impairment rating. As solely a pain management doctor, the statute does not envision him completing those tasks—nor is he qualified to place an employee at maximum medical improvement for a specialty that he does not possess.

4

Tennessee Code Annotated section 50-6-204(k)(1) states that all permanent impairment ratings "shall be assigned by the treating physician[.]" In addition, Tennessee Compilation Rules and Regulations 0800-02-17-.25(1)-(2) (September 2021) reads, "The authorized treating physician *is required and responsible for* the employee's maximum medical improvement (MMI) date and providing the employee's impairment rating for the injury the physician is treating." (Emphasis added). Notably, the statute and rule use mandatory language and make no exception for when a treating physician declines to make these critical decisions in a workers' compensation case.

Dr. Willers wrote in July 2022 that he had nothing further to offer. Several months have passed since then, and he did not refuse to see Ms. Kanbi again. Therefore, Kebab Gyros shall promptly schedule an appointment with him, so that Dr. Willers may decide if/which additional treatment is necessary. He also must determine maximum medical improvement and Ms. Kanbi's impairment rating.

If Dr. Willers declines to see her, to place her at maximum medical improvement, or to provide an impairment rating, Kebab Gyros must offer a panel of orthopedists to do so. *See Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *7-10 (Sept. 12, 2017) (An injured worker is entitled to reasonably necessary additional treatment in an accepted claim at the interlocutory stage, and if the authorized treating physician declines to treat the employee further, a panel is appropriate.).

IT IS THEREFORE ORDERED:

1. Kebab Gyros must provide additional treatment with Dr. Willers, who must assign maximum medical improvement and an impairment rating. If he is unwilling to see Ms. Kanbi, Kebab Gyros must offer a panel of orthopedic specialists to perform these tasks.

2. A status hearing is set for **May 15, 2023, at 9:00 a.m. Central Time.** You must dial (615) 532-9552 or (866) 943-0035 to participate. **Kebab Gyros must arrange for a Court-certified interpreter.**

3. Unless interlocutory appeal of this Expedited Hearing Order is filed, compliance with this Order must occur by seven business days of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance by email to WCCompliance.Program@tn.gov by the compliance deadline. Failure to do so may result in a penalty assessment for non-compliance. For compliance questions, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED March 20, 2023.**

_Kenneth M. Switzer_

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

### Appendix

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice, and Employer's Additional Information
3. Status Hearing Order, February 22, 2021
4. Status Hearing Order, May 26, 2021
5. Status Hearing Order, August 31, 2021
6. Status Hearing Order, November 16, 2021
7. Status Hearing Order, February 14, 2022
8. Motion for Status Hearing
9. Motion to Compel Medical Treatment
10. Status Hearing Order, March 8, 2022
11. Motion to Compel Temporary Disability Benefits
12. Employer's Response/Motion to Compel Dr. Willers' Examination
13. Employee's Response
14. Order Granting Motion to Compel
15. Status Hearing Order, May 2, 2022
16. Status Hearing Order, May 23, 2022
17. Status Hearing Order, August 8, 2022
18. Status Hearing Order, October 18, 2022
19. Motion to Withdraw
20. Employer's Response
21. Amended Order Granting Withdrawal and Attorney's Lien
22. Status Hearing Order, January 18, 2022
23. Hearing Request
24. Employer's Response to Hearing Request
25. Order Setting Expedited Hearing

Evidence:
1. Declaration of Ms. Kanbi
2. Dr. Bushman's records, 2/6/23 only
3. Dr. Hazlewood's records
4. Dr. Willers's records

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on March 20, 2023.

| Name | Certified Mail | Mail | Email | Sent to |
|---|---|---|---|---|
| Cecilia Kanbi, employee | | X | X | ahamofa@gmail.com 1201 Field Oak Court Antioch TN 37013 |
| G. David Hatfield, employer's attorney | | | X | dhatfield@gdhatfieldlaw.com |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____  ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*